UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BARBARA STERIO,   No. 2:06-CV-1045-MCE-GGH

    Plaintiff,

  v.   MEMORANDUM & ORDER

HIGHMARK LIFE INSURANCE COMPANY,

    Defendant.

----oo0oo----

This matter came on for trial before the Court on June 20, 2008. Jesse Kaplan appeared on behalf of Plaintiff Barbara Sterio ("Plaintiff"). Nancy Potter appeared on behalf of Defendant HM Life, formerly known as Highmark Life Insurance Company ("Defendant" or "Highmark"). After hearing the evidence and arguments, the Court makes the following Findings of Fact, by a preponderance of the evidence, and Conclusions of Law as to Plaintiff's claim against Defendant. The Court concludes that judgment should be entered in favor of Defendant.

///

///

1

**FINDINGS OF FACT**[1]

Plaintiff was employed as a receptionist. Defendant provided group employee disability benefits to Plaintiff's employer. Plaintiff's last date on the job was December 29, 2000. In early 2001, Plaintiff underwent hip surgery. After that surgery, Plaintiff complained of loss of sensation in her right calf and foot. An EMG (neurological examination) in August 2000 resulted in findings consistent with right sciatic neuropathy, but no evidence of radiculopathy, lumbrosacral plexopathy, or polyneuropathy of the lower extremities. In January 2001, Plaintiff's treating physician noted that her physical examination was normal, except for sciatica in her right hip and thigh, for which medication was provided. In June 2002, she was seen by an orthopedist for her continuing hip pain, and reported that she could walk two blocks, walk through a grocery store with a walker, and stand for 30 minutes at a time.

In May 2003, Plaintiff dropped something on her foot, breaking two bones. In June 2003, during an argument with family members, she took an overdose of her medication, was hospitalized, and thereafter spent seven days in a psychiatric facility. Shortly after her release she first applied for disability benefits from Highmark. In August 2003, Plaintiff was again hospitalized in a psychiatric facility.

---

[1] At trial, the parties acknowledged that they did not dispute the facts of the case, but only the applicable standard of review and eligibility determination. Accordingly, only a cursory recitation of the facts is necessary.

2

Records were not obtained from the psychiatric hospitalizations because Plaintiff did not mention them on her application.

In July 2003, after her first psychiatric hospitalization, Plaintiff was seen by physician Sayed Janmohamed. Dr. Janmohamed is Board Certified in internal medicine. He is not a neurologist, orthopedist, or psychiatrist.

After Highmark received Plaintiff's claim, it made requests to Kaiser Foundation Health Plan for medical records and to Plaintiff's former employer for wage information. The wage information and medical records were received in or around late October 2003. In addition, Dr. Janmohamed submitted a statement that Plaintiff was using a walker and was totally disabled by reason of her leg pain and depression.

On December 2, 2003, having received the medical records from Kaiser and proof of wage loss, Highmark requested the assistance of Broadspire Services to provide physician review of the medical records and to advise on "split recommendations", i.e., whether the employee was initially disabled from her own occupation, and subsequently was disabled from engaging in any occupation.

Based upon the medical information submitted, Broadspire procured a records review and opinion from neurologist Vaughn Cohan, M.D. Dr. Cohan noted that Plaintiff's occupation as a receptionist had a light level of physical demand, that she potentially required a foot drop brace and a walker, but that there was no documentation to support a finding of total disability from a neurological or orthopedic standpoint.
///

Broadspire also procured a peer review from a psychiatrist, Barry Glassman, M.D., who found that Ms. Sterio was totally disabled from a psychiatric standpoint during the time she was hospitalized following her overdose, but was not disabled by her psychiatric prior to or after that time.  When making his evaluation, Dr. Glassman did not have the records from the psychiatric hospital Plaintiff was transferred to following her stay at Kaiser related to her overdosing on her pain medication. Those records were not provided to Highmark or Broadspire until June 2004.

Broadspire, on December 18, 2003, sent a letter to Ms. Sterio explaining that it was the administrator for Highmark, that physicians with specialties in neurology and psychiatry had reviewed her Kaiser file, that she was ambulatory with a walker, had no cognitive dysfunction, and there was no evidence that her medical condition prevented her from engaging in light-level work as a receptionist.  The letter concluded with instructions to Plaintiff as to how to appeal.

On January 20, 2004, attorney Jesse Kaplan, who is also Plaintiff's attorney in this litigation, advised Broadspire that he would represent Plaintiff in appealing Broadspire's decision.

In June 2004, Mr. Kaplan provided some of the same records Highmark had already obtained, and also provided an updated health assessment by Dr. Janmohamed, the internist. Dr. Janmohamed stated that Plaintiff could walk, stand, or sit, each for less than one hour's duration at a time, that she needed rest periods, that she could frequently lift less than five pounds, but never more than that.

1 Dr. Janmohamed identified no emotional or psychological problems.
2 Although Dr. Janmohamed repeated that Plaintiff was totally and
3 permanently disabled from any type of gainful employment, he did
4 not identify what medical conditions supported that assessment,
5 or supported his assessment that she had limitations in her upper
6 body capabilities.  Mr. Kaplan also provided Broadspire with
7 records from the psychiatric hospital pertaining to both of
8 Plaintiff's hospitalizations.

9     In order to evaluate the new information, together with the
10 information previously received, Broadspire sent the medical
11 records to four specialists - a psychologist, neurologist,
12 orthopedic surgeon, and internal medicine specialist.  By August
13 2004, all four doctors had returned their evaluations that
14 Plaintiff was not totally disabled from her own or any
15 occupation.  Broadspire sent these findings to Highmark.

16     In September 2004, an in-house physician employed by
17 Highmark reviewed the medical records and the peer review
18 evaluations and determined that Ms. Sterio had failed to show
19 that she was totally disabled from her own or any occupation.
20 Accordingly, Highmark denied her request for long-term disability
21 benefits.

22     The Group Long-Term Disability Insurance Policy between
23 Defendant and Plaintiff's employer provides:

> Except for those functions which the Group Policy
> specifically reserves to the Employer, [Highmark has]
> the full and exclusive authority to administer claims
> and to interpret the Group Policy and resolve all
> questions arising in the administration,
> interpretation, and application of the Group Policy.
>
> Our authority includes, but is not limited to, the
> following:

5

1. The right to resolve all matters when a review has been requested.
2. The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it.
3. The right to determine (a) [a member's] eligibility for Insurance, (b) [a member's] entitlement to benefits, and (c) the amount of the benefits payable to [a member].

After Defendant denied Plaintiff's claim for long-term disability benefits, Plaintiff brought this action under 29 U.S.C. § 1132.

**CONCLUSIONS OF LAW**

"A civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The parties do not dispute that Plaintiff is a beneficiary entitled to bring such an action. At trial, the parties did not dispute the facts, but only the standard of review to be applied by this Court.

**1.   Standard of Review Under <u>Abatie</u>**

A denial of benefits "is to be reviewed under a <u>de novo</u> standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989).

///
///

6

"When a plan unambiguously gives the plan administrator discretion to determine eligibility or to construe the plan's terms, a deferential abuse of discretion standard is applicable." Burke v. Pitney Bowes Inc. Long-Term Disability Plan, ___ F.3d ___, 2008 WL 4276910, *6 (9th Cir. 2008)(citing Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006)).

Accordingly, the first step in the analysis is to determine whether the plan at issue in this case unambiguously confers discretion upon Highmark to determine eligibility or construe the plan's terms. This Court finds that it does. In Abatie, the Ninth Circuit found the following language sufficient to confer discretion:

> The responsibility for full and final determinations of eligibility for benefits; interpretation of terms; determinations of claims; and appeals of claims denied in whole or in part under [the policy] rests exclusively with [the insurer].

458 F.3d at 963. Like the plan in Abatie, the plan in this case gives Highmark the "full and exclusive authority" to administer claims, interpret the policy, resolve questions, determine eligibility for benefits, determine entitlement to benefits, and determine the amount of benefits. Plaintiff argues that this clause only confers authority, but not discretion as required under Abatie. That argument and the cases cited in support of it are unavailing.

///
///
///
///

In accordance with Abatie, this Court finds that the language of the plan unambiguously confers discretion upon Highmark. Accordingly, the Court will apply the abuse of discretion standard unless other factors mitigate against it.[2]

### 2. Conflict of Interest

Where a plan grants discretionary authority to the administrator, as does the plan in this case, the court reviewing the denial of benefits is to apply an abuse of discretion standard. However, the review should be "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." Abatie, 458 F.3d at 967. A conflict of interest decreases the level of discretion given to the plan where "the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting the plan terms incorrectly or by making decisions against the weight of evidence in the record." Id. at 968-69 (citations omitted).

///
///
///

---

[2] Plaintiff also argues that Highmark's use of Broadspire in making Plaintiff's eligibility determination requires the Court apply de novo review. The Court disagrees, but finds that it may be a factor to consider in determining whether Highmark abused its discretion. See Abatie, 458 F.3d at 967.

8

1    Plaintiff contends that Highmark has a conflict of interest
2 in that it failed to have a meaningful dialogue with Plaintiff as
3 required by ERISA, that it gave inconsistent reasons for denial
4 of Plaintiff's claim, and that it failed to adequately
5 investigate the claim.  Plaintiff contends there were two denial
6 letters sent from Broadspire to Plaintiff.  In the first letter,
7 Broadspire reviewed some ten reports or test results and
8 determined that Plaintiff was not disabled from her own light-
9 level physical demand position nor from any position because
10 there was no evidence of cognitive dysfunction or dysfunction of
11 her upper extremities.  A.R. at 220-22.
12    In the second letter, Broadspire reviewed the additional
13 material provided by Plaintiff's attorney and determined that
14 "the submitted documentation lacked sufficient medical evidence
15 ... to substantiate significant impairments in physical and/or
16 psychological functioning that would have prevented Ms. Sterio
17 from performing the essential functions of her occupation" or any
18 occupation.  In the letter, Broadspire acknowledged Plaintiff's
19 psychiatric hospitalizations, but found that she was not entitled
20 to benefits because she was not disabled on the effective date
21 and because the hospitalizations were beyond the 24-month window
22 for mental illnesses provided in the policy.  A.R. at 1065-66.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

9

Plaintiff argues that these letters do not constitute a meaningful dialogue as required by ERISA. The Court disagrees. These letters communicated to Plaintiff the reasons Plaintiff was not found to be disabled. Her job only required light-level activity and she suffered no cognitive injury, no significant psychological impairment, nor any injury to her upper extremities, only to her hip and leg.[3]

Plaintiff's additional contention - that these two letters create inconsistent reasons for denial - is without merit. The only difference between the two letters is that the second takes into account the additional documentation provided by Plaintiff. These are not the kind of inconsistent reasons for denial contemplated by Abatie. In Abatie, the original basis for denial of the claim was that the insurer did not accept the evidence that payment of premiums had been waived. Then, in the final denial letter, in addition to stating that there had been no premium waiver, the defendant added the ground that the decedent had not been disabled.[4] 458 F.3d at 974. The two denial letters in this case do not provide inconsistent reasons for denial.

///
///

---

[3] Plaintiff's citation to Booton v. Lockheed Martin Medical Benefit Plan, 110 F.3d 1461 (9th Cir. 1997), is unavailing. In Booton, the reviewing doctors failed to even consider some of the plaintiff's complaints. That is not the case here.

[4] See Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc., 125 F.3d 794, 799 (9th Cir. 1997) cited in Abatie. In Lang, the court found inconsistent reasons for denial where the administrator first found the claimant did not have fibromyalgia and later required the claimant to show that fibromyalgia, in and of itself, was debilitating.

10

Because the Court finds no evidence of a conflict of interest factoring heavily against the abuse of discretion standard, the Court's skepticism of structural conflict of interest will be low.  <u>Abatie</u>, 458 F.3d at 968.  Additionally, this Court finds that the relationship between Highmark and Broadspire does alter this structural conflict and does not warrant a higher level of scrutiny.

### 3. **Review of Highmark's Decision**

Because the applicable standard is abuse of discretion, the Court will review Highmark's decision only to determine whether the decision was arbitrary or capricious.  <u>Barnett v. Kaiser Foundation Health Plan, Inc.</u>, 32 F.3d 413, 415-416 (9th Cir. 1994).

At the trial on this matter, it was apparent that the crux of Plaintiff's argument is that Highmark failed to conduct an occupational or vocational analysis in connection with its determination that Plaintiff was not totally disabled because she could work with accommodations.

On her disability claim, Plaintiff indicated that she worked as a receptionist and that her duties involved answering phones, taking messages, setting appointments, filing charts, pulling charts, scheduling, and handling the mail.  She described her disability as neuropathy of the right leg and foot, inability to walk without a walker, inability to sit or stand for more than 30 minutes, severe pain, severe fatigue, and many medications.
///

11

See A.R. at 95-99.  Her disability claim makes no mention of any psychiatric problems.

The parties make much of the treating physician rule as applied to ERISA cases.  The Supreme Court has specifically held that under ERISA "plan administrators are not obliged to accord special deference to the opinions of treating physicians."  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003).  While plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," unlike in Social Security cases, the claimant's physician's opinion is not entitled to any special weight, nor are plan administrators required to give an "explanation when they credit reliable evidence which conflicts with a treating physician's evaluation."  Id. at 834.

Plaintiff has identified two reports from her treating physician, Dr. Janmohamed.  The first is a Disability Status Form (A.R. at 99) and the second is a Functional Capacity Evaluation (A.R. at 346-49).  The Disability Status Form indicates that Plaintiff is permanently disabled with sciatica, chronic pain, and neuropathy.  It indicates that she uses a walker and suffers from depression.  The Functional Capacity Evaluation indicates that Plaintiff has osteoarthritis and degenerative joint disease and that she is "totally and permanently disabled from any type of gainful employment."  Additionally, Plaintiff's treating physician was not a specialist in neurology and psychiatry, which allegedly gave rise to her disability.

///
///

On the other hand, the several doctors that Broadspire consulted with all determined that Plaintiff was not totally disabled.  Dr. Vaughn Cohan, a neurologist, reviewed several laboratory test results, reports, and chart notes and determined there was no evidence that Plaintiff had any cognitive dysfunction or dysfunction of the upper extremities.  In his opinion, the documentation submitted by Plaintiff did not demonstrate objective evidence of a functional impairment that would preclude Plaintiff from performing the core elements of her light-level physical demand occupation or from "any occupation."  Dr. Cohan deferred to a psychology/psychiatry peer review physician for review of Plaintiff's behavioral health issues.  A.R. at 214-16.

A second neurologist, Dr. Henry Spira, reviewed the same documents as Dr. Cohan as well as documents submitted by Plaintiff's counsel in connection with the appeal of the initial denial of benefits.  He also reviewed the treating physician's Functional Capacity Evaluation.  Dr. Spira concluded that there was no neurological objective data that would preclude Plaintiff from performing sedentary work or work requiring light physical exertion.  A.R. 813-15.

Dr. Martin Mendelssohn, an orthopaedic surgeon, also reviewed Plaintiff's record.  He reviewed the reports of several physical examinations and the Functional Capacity Evaluation of Plaintiff's treating physician.  Dr. Mendelssohn concluded that the finding in the Functional Capacity Evaluation that Plaintiff was permanently disabled did not correlate with the examination findings of the other doctors.

13

Dr. Mendelssohn concluded that the medical information failed to support a finding of a functional impairment that would preclude Plaintiff from performing her duties as a receptionist provided accommodations could be made for her use of a walker.  A.R. 817-20.

Dr. Glassman, a psychiatrist, found that Plaintiff was disabled from June 8, 2003 to June 13, 2003 due to her psychiatric hospitalization, but otherwise was not disabled from a psychiatric perspective.  A.R. 211-13.  Dr. Burstein, a psychologist reviewed Plaintiff's records and determined that, with the exceptions of her psychiatric hospitalizations from June 8, 2003 to June 15, 2003, and from August 1, 2003 to August 5, 2003, there was no evidence that Plaintiff would have been unable to perform the core elements of her own occupation, or work at all, from a psychological perspective.  A.R.  805-08.

Dr. Tamara Bowman, a specialist in internal medicine also reviewed Plaintiff's medical documentation.  Dr. Bowman reviewed Plaintiff's complaints of irritable bowel syndrome and acid reflux and found that there was insufficient evidence to support a finding of a level of functional impairment that would prevent Plaintiff from performing her occupation.  A.R. 809-12.

Finally, Broadspire's Medical Director, Dr. William Goldfarb, reviewed Plaintiff's medical records and all the peer review reports generated by the specialists who reviewed those records. Dr. Goldfarb found that the Functional Capacity Evaluation completed by Plaintiff's treating physician was "notable in terms of its absence of actual objective evaluation that would serve as a basis for the limitations noted in the report."

14

1  Dr. Goldfarb concluded that there was no basis by which to
2  establish an inability on the part of Plaintiff to perform in her
3  occupation from the time period March 31, 2001 through March 30,
4  2003.  The only evidence in the medical record that would serve
5  to indicate that Plaintiff was unable to be gainfully employed
6  subsequent to March 30, 2003 were the periods of psychiatric
7  hospitalization which amounted to 13 days in the months of June
8  and August, 2003.  A.R. at 1063-64.
9      Plaintiff's alleged disabling conditions were her leg
10 neuropathy and her depression.  She required assistive devices to
11 walk, and medicine to deal with her depression and pain, but
12 these factors were not, in the opinion of specialists in
13 psychiatry, neurology, orthopedics, and internal medicine, so
14 disabling that she was precluded from working in her own
15 occupation as a receptionist or any other profession for which
16 she was reasonably fitted.  In light of the conflicting evidence,
17 this Court cannot say Highmark abused its discretion in
18 evaluating Plaintiff's disability claim.  The reviewing
19 physicians cited objective evidence from Plaintiff's medical
20 records to support their conclusions.  The only evidence of
21 Plaintiff's disability was the 13 days she underwent psychiatric
22 hospitalization.  As stated in the final denial letter, Defendant
23 found that the mental hospitalization was beyond the 24-month
24 period for mental illnesses provided by the policy, which
25 Defendant had the authority to interpret.
26 ///
27 ///
28 ///

15

Plaintiff argues that Highmark abused its discretion by failing to hire an occupational or vocational specialist to determine whether Plaintiff could perform the duties of her position as a receptionist. The Court finds this was not an abuse of discretion as Plaintiff provided a description of her job that included answering phones, taking messages, and filing. These are common tasks and it was not beyond the doctors' expertise to determine whether she could perform them. Accordingly, Defendant did not abuse its discretion in relying on the doctors' opinions and failing to consult an occupational specialist.

Based on the foregoing, the Court finds that Highmark's decision was not arbitrary or capricious, and that Highmark did not abuse its discretion in denying Plaintiff's claim for long-term disability benefits.

**CONCLUSION**

For the reasons set forth above, judgment shall be entered in favor of Defendant.

IT IS SO ORDERED.

Dated: September 30, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE